UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| PIERRE JORDAN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 3:17-cv-626-GCS |
|  | ) |  |
| KELLY GAY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Pierre Jordan, an inmate in the custody of the Illinois Department of Corrections, alleges that Defendant Kelly Gay, a mental health professional, subjected him to cruel and unusual punishment by sexually harassing him during counseling sessions while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Now before the Court is a motion for summary judgment filed by Defendant Gay (Doc. 59). For the reasons delineated below, the Court denies Defendant's motion.

### FACTUAL BACKGROUND

At all times relevant to his complaint, Jordan was incarcerated at Lawrence. Gay was a mental health professional employed by Wexford Health Sources, Inc. and assigned to work at Lawrence. Jordan was deposed on June 3, 2019, but he makes a number of new or different claims in his response to Gay's motion for summary judgment, which Gay asks the Court to disregard. Even disregarding these allegedly new

allegations, as Gay requests, the positions of the parties on the facts of this case are straightforward.

At his deposition, Jordan testified that he is on medication for hallucinations like hearing voices, for post-traumatic stress, trauma, severe depression, bipolar, impulse issues, and sleep problems. (Doc. 59-3, p. 6). He is a member of the Black Disciple gang and faced a lot of trouble with gang violence while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). As a result, he was transferred to Lawrence. (Doc. 59-3, p. 8-9). Another inmate and Black Disciple member, Herbert Tribble, was transferred from Pinckneyville to Lawrence, as well, at some point before Jordan's transfer. On May 22, 2016, following some sort of argument or incident during yard, Tribble stabbed Jordan in the neck with a pen as Jordan was returning to the cell house. Jordan was sent to segregation after he was stabbed, and it was during his time in segregation that he met Gay. (Doc. 59-3, p. 10).

According to Jordan, he was not receiving medical care for his injuries while in segregation, and he was depressed and having nightmares. He talked to an inmate in a neighboring cell, Anthony Williams, who told Jordan that Gay was "green," meaning that she was a "freak." Williams told Jordan that, when Gay came by his cell, she encouraged Williams to masturbate as she watched and would engage in provocative conversations with him. (Doc. 59-3, p. 12). Gay denies engaging in any sort of provocative or inappropriate relationships with inmates.

The parties disagree about the nature of the relationship between Gay and Jordan. Jordan, at his deposition and, later, in his response to Gay's motion for summary

judgment, tells a tale of a burgeoning physical relationship between the two. Jordan claims that it began with his second mental health visit with Gay in segregation in May 2016. The relationship grew to include Gay watching him masturbate, Gay unbuttoning her shirt and fondling herself as he masturbated, provocative conversation, and, when they were alone, touching. (Doc. 59-3, p. 13, 17) Gay denies they ever had any sort of inappropriate relationship and claims that Jordan would attempt to get close to her on occasion. It made her uncomfortable, and she maintains that she would warn him to maintain spatial boundaries, as their relationship was only professional. (Doc. 59-1).

The disagreement is evident in the parties' recollection of an August 9, 2016 encounter that led to disciplinary charges for Jordan. Jordan went to meet with Gay for a follow-up appointment in a classroom at Lawrence. Another mental health professional, Hailey Basnett, was present. During the session, Jordan twice attempted to give Gay love notes. Jordan says the first time he tried to give Gay the notes she would not accept them, as she was training Basnett. (Doc. 59-3, p. 18-21). Gay says she told him that if she took the notes, they would become part of his medical records, meaning other mental health personnel could see them, and Jordan decided not to give them to her. (Doc. 59-1).

The parties agree that Jordan attempted to give the letters to Gay a second time. Gay claims that she refused to take the notes and that she dismissed Jordan from the session. Jordan refused to leave. He stepped towards her and touched her on her left hip. Gay immediately told him to stop touching her, and she reported the incident to the desk officer, to Sergeant Walker, and to Lieutenant McCarthy. According to Gay, Jordan said things to her like, "Please do not do this to me," and "We just had a nice session." Jordan

was issued a ticket for the inappropriate behavior. (Doc. 59-1). Jordan claims he did not touch her that day. (Doc. 59-3, p. 22-24).

After the August 9, 2016 incident, Gay did not treat Jordan again until he was in crisis watch in October 2016. According to Gay, she was assigned to the cell block on the floor below Jordan's cell in the months following the August 2016 incident. As she conducted rounds, Jordan would say things like, "Come up here, Ms. Gay." Gay found the comments inappropriate and did not respond. She did not meet with Jordan between August 9, 2016, and October 8, 2016. (Doc. 59-1).

Before taking the assignment to include Jordan on her rounds in crisis watch, Gay met with Dr. Luke Fairless, the mental health authority at Lawrence. She was the only mental health professional working on the weekends, and she asked Dr. Fairless if she should provide daily crisis rounds to Jordan over the weekend given the disciplinary ticket she had written for assault. They decided she would meet with Jordan on a limited basis. Gay requested that an officer escort her to the meetings, and her request was granted. Gay and Jordan met a handful of times in October 2016. According to Gay, Jordan attempted to engage in various lewd and inappropriate actions toward her, and she called for the nearby officer each time. (Doc. 59-1). Jordan claims that the two reverted to their non-professional relationship. (Doc. 59-3, p. 26-27).

The interactions between Jordan and Gay culminated in Jordan filing a grievance in January 2017, and, eventually, in a Prison Rape Elimination Act ("PREA") investigation conducted by Lieutenant Shawn Ochs. Lt. Ochs was responsible for overseeing and conducting internal investigations into allegations of PREA violations at Lawrence.

According to Ochs, he investigated, among other issues, Jordan's allegations that Gay and another mental health professional, Amy Deel-Hout, allowed Jordan to masturbate and perform other sexual acts during mental health appointments for the personal gratification of the women. Ochs deemed the claims against Gay and Deel-Hout, who is not a party to this lawsuit, unsubstantiated based on the preponderance of the evidence. (Doc. 59-2).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.,* 756 F.3d 542, 544 (7th Cir.

2014).

The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)(citation omitted). To succeed on a claim related to conditions of confinement, a plaintiff must establish both an objective and subjective element. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). As to the objective element, a prisoner must establish that the conditions deny him "the minimal civilized measure of life's necessities," creating an excessive risk to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To do so, he must show that the conditions resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *See Rhodes*, 452 U.S. at 347.

The Seventh Circuit has indicated that an Eighth Amendment claim for sexual harassment in a prison is potentially viable. *See, e.g.*, *Pruitt v. Mote*, 503 F.3d 647, 650-651, 660 (7th Cir. 2007)(evaluating the standard for recruiting counsel for a *pro se* inmate who alleged a guard strip-searched and fondled him). The alleged misconduct generally must involve more than "words and gestures." *Allen v. Wine*, No. 07-2945, 297 Fed. Appx. 524, 530 (7th Cir. Oct. 24, 2008)(citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). Generally, "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, . . . ." *DeWalt*, 224 F.3d at 612, *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). In certain circumstances, however, verbal harassment may rise to the level of cruel and unusual punishment. *See Beal v. Foster*, 803 F.3d 356, 357-358 (7th Cir. 2015)(finding that the "alleged pain from harassment may be

physical *or psychological"*)(emphasis in original)(citing reference omitted). In the prison context, most verbal harassment does not rise to the level of cruel and unusual punishment, "[b]ut some does." *Id*. at 358. (citations omitted).

## ANALYSIS

The Court's role at summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court takes seriously its duty to avoid weighing the evidence and to refrain from substituting the undersigned's opinion on matters best left to the jury.

The parties proffer two different versions of the events giving rise to Jordan's claim, and they disagree on most material issues of fact. If a jury believes Jordan, then Gay engaged in some degree of seduction of Jordan, participated in conversations of a provocative and sexual nature, engaged in acts of voyeurism, and, when they were alone, engaged in some degree of inappropriate physical touching. A reasonable juror could find that these actions rise to the level of cruel and unusual punishment prohibited by the Eighth Amendment. That said, if a juror believes Gay, then Jordan, a person with admitted severe mental illness, perhaps concocted a made-up relationship with her and attempted to be physically close to her, inappropriately, on multiple occasions, causing her concern and distress. These factual disputes must be resolved by a jury.

Jordan's testimony, if credited by a jury, could allow a finding that his version of his relationship with Gay went beyond simple, or fleeting, harassment, given the totality

of the circumstances and that Gay was in a position to know, subjectively, of the potential psychological harm her conduct caused or could cause Jordan. The Court is hesitant to find as a matter of law, as Gay suggests, that because Jordan describes these alleged contacts as a consensual relationship, he cannot succeed on a claim of cruel and unusual punishment for alleged sexual harassment. The question is whether, objectively, Gay's conduct created a risk to Jordan's health or safety, and whether, subjectively, Gay knew or should have known of that risk.

Here, if Jordan is believed, Gay, a mental health worker, was engaged in a relationship of a provocative or sexual nature with a severely mentally ill inmate who was in her care for mental health treatment. A reasonable juror could find that such conduct created an objective risk to Jordan's health or safety, *i.e.*, his psychological health, and that Gay, as a mental health professional, knew or should have known of that risk. As such, the Court cannot grant summary judgment in her favor due to the disputes of material fact, nor can the Court conclusively find that no constitutional violation occurred and that Gay is entitled to qualified immunity.

Gay also raises an exhaustion-based defense, arguing that Jordan, in his deposition, brought up allegations that go beyond the scope of the pre-deposition record in this action, in particular the allegations in his January 2017 grievance. That is, Gay argues that Jordan added his details about touching her and about her unbuttoning her shirt and exposing herself to him after he filed his grievance. These claims came out later during his deposition, according to Gay.

Gay agrees that the January 2017 grievance was exhausted. However, she challenges whether it was sufficient to cover the allegations and testimony in this action. In his grievance, Jordan, whose handwriting is highly illegible as previously noted by the Court, clearly claims that Gay engaged in unprofessional conduct by having a physical and "psycho-sexual" relationship with him. Gay is mentioned by name in the grievance, and Jordan adequately describes conduct sufficiently similar to his allegations and testimony in this case such that Gay's single-paragraph argument does not convince the undersigned that Jordan failed to exhaust his administrative remedies prior to filing suit.

## Conclusion

For all these reasons, the Court **DENIES** Defendant Kelly Gay's motion for summary judgment. This case shall proceed to trial. The Court, by separate order, will appoint counsel for Plaintiff Pierre Jordan and will set this matter for a status conference to discuss potential trial dates.

**IT IS SO ORDERED.**

Dated: February 7, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.02.07 14:44:57 -06'00'

GILBERT C. SISON
United States Magistrate Judge